HCA HEALTH SERVICES OF INDIANA, INC., d/b/a North Clark Community Hospital, Appellant–Defendant,

v.

Jennifer Elaine GREGORY, Natural Parent of Kristin Allyson Gregory, An Infant, Now Deceased, Appellee–Plaintiff,

Joseph H. Beaven, M.D. and Robbie Martin, Appellees–Defendants.[1]

No. 10A01–9111–CV–363.

Court of Appeals of Indiana, First District.

July 30, 1992.

Transfer Denied Oct. 26, 1992.

John D. Nell, Martha W. Irwin, Wooden McLaughlin & Sterner, Indianapolis, for appellant-defendant.

Edwin Sedwick, Jeffersonville, Dennis J. Hummel, Hummel & Coan, Louisville, Ky., for Jennifer Elaine Gregory.

1. Joseph H. Beaven, M.D. and Robbie Martin    are not participating in this appeal.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

HCA Health Services of Indiana, Inc., d/b/a North Clark Community Hospital ("Hospital") presents this interlocutory appeal from an order denying its motion for summary judgment on the federal medicare anti-dumping claim brought by Jennifer Elaine Gregory, natural parent of Kristin Allyson Gregory, an infant, now deceased ("Gregory"). We reverse and remand.

## ISSUE

We restate the issue on appeal as:

Is Gregory's federal medicare anti-dumping claim barred by the time limitation set forth in 42 U.S.C. § 1395dd(d)(3)(C) [2] because the procedural requirements under Indiana's Medical Malpractice Act are preempted by the mandates of the federal statute?

## FACTS [3]

On November 13, 1987, Gregory's daughter was discharged from Hospital, and later died. Gregory filed her proposed complaint in three counts with the Indiana Department of Insurance ("Department") on February 10, 1989; one count alleged a federal medicare anti-dumping claim under 42 U.S.C. § 1395dd. *See* Record at 40. Gregory has not filed an action alleging the federal medicare anti-dumping claim against Hospital in state or federal court.

Hospital filed a motion for preliminary determination pursuant to IND.CODE § 16-9.5-10-1 on February 28, 1991. At that time, Hospital also filed a motion for summary judgment on the federal medicare anti-dumping claim. After a hearing, the trial court denied the summary judgment motion on September 10, 1991. Record at 177–179.

On November 19, 1991, Hospital requested that the trial court certify its ruling on the summary judgment motion for interlocutory appeal pursuant to Ind.Appellate Rule 4(B)(6). The trial court certified its order on November 21, 1991, and we accepted appellate jurisdiction on March 3, 1992. Other relevant facts will be stated in our discussion.

## DISCUSSION AND DECISION [4,5]

When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without determining weight or credibility. *Id.* Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be granted. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the nonmovant. *Jackson v. Warrum* (1989), Ind.

---

**2.** This provision was recodified without substantive changes at 42 U.S.C. § 1395dd(d)(2)(C), but we refer to its classification at the time the events at issue occurred.

**3.** We note that Gregory's appellee's brief's facts section contains inappropriate argumentative language. *See* Ind.Appellate Rule 8.3(A)(5). However, such marginal compliance with the rule does not thwart our review.

**4.** We agree with Hospital that this appeal involves only the procedural issue of whether the federal anti-dumping statute's procedural requirements preempt those of the Indiana Medical Malpractice Act, thereby barring Gregory's claim. *See* Reply Brief at 1–2. Thus, Gregory's discussion of the substantive merits of her federal claim is irrelevant and inappropriate under the mandates of Ind.Appellate Rule 4(B) governing the certification of interlocutory appeals.

**5.** We note that Gregory's interpretation of *Miller Brewing Co. v. Best Beers of Bloomington, Inc.* (1991), Ind.App., 579 N.E.2d 626, *trans. pending*, is incorrect, and that case is inapplicable to the case at bar. Judge Sharpnack definitely did not aver that federal courts are incapable of interpreting Indiana law. *See* Appellee's Brief at 19. Rather, Judge Sharpnack noted that federal decisions interpreting state law are of only persuasive precedential value, and that decisions from Indiana and federal courts on the disputed issue presented conflicting interpretations of the relevant law and its application to the facts. *Miller*, 579 N.E.2d at 635, n. 5.

App., 535 N.E.2d 1207, 1210. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54.

■ Hospital claims that the trial court erred in denying its summary judgment motion and misconstrued the interaction between the procedural mandates of the Indiana Medical Malpractice Act ("State Act")[6] and the Emergency Medical Treatment and Active Labor Act ("EMTALA")[7]. Gregory counters that the two acts are not in conflict and their required procedures may be harmonized; thus, she contends, her action under EMTALA against Hospital is not time-barred. We agree with Hospital, and find that its summary judgment motion should have been granted.

EMTALA operates to restrict, among other things, the transfer, or "dumping," of patients from hospitals until their conditions have stabilized. *See* 42 U.S.C. § 1395dd(c); *Reid v. Indianapolis Osteopathic Medical Hospital, Inc.* (S.D.Ind. 1989), 709 F.Supp. 853, 853–854. The enforcement provisions of EMTALA are found at 42 U.S.C. § 1395dd(d), and, among other things, create a private cause of action against hospitals which improperly transfer patients. *Reid,* 709 F.Supp. at 854. The dispute in this action pertains to the clause governing the limitations of actions in civil enforcement, found at 42 U.S.C. § 1395dd(d)(3)(C). This section provides in full:

> "Limitations on actions. No action may be brought under this paragraph more than *two years after the date of the violation* with respect to which the action is brought."

42 U.S.C. § 1395dd(d)(3)(C) (emphasis added).

This dispute also involves the doctrine of federal preemption. Preemption occurs when state law interferes with or is contrary to federal law; in those cases, the federal law effectively nullifies the state law. *Santini v. Consolidated Rail Corp.* (1987), Ind.App., 505 N.E.2d 832, 835. A state law must yield to a federal law if Congress clearly shows its intent to specifically regulate the matter covered by the federal law at issue. *Deberry v. Sherman Hospital Association* (N.D.Ill.1990), 741 F.Supp. 1302, 1307; *Santini,* 505 N.E.2d at 836. EMTALA addresses this issue also:

> "Preemption. The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement *directly conflicts* with a requirement of this section."

42 U.S.C. § 1395dd(f) (emphasis added). The parties dispute the application of the phrase "directly conflicts" to the State Act and its procedural requirements. Gregory maintains that no provisions of EMTALA directly conflict with the State Act, so she acted properly in following the State Act's requirements by filing her proposed complaint with the Department before filing a complaint in either state or federal court. *See* IND.CODE § 16–9.5–9–2 (requires proposed medical malpractice complaint to be first presented to Department and medical review panel, and decision therefrom received before action may be commenced in state court). Hospital contends, however, that the procedural requirements of EMTALA and the State Act directly conflict; therefore, EMTALA preempts the State Act, and Gregory's federal claim under EMTALA is governed by EMTALA's procedural mandates, specifically the two-year statute of limitations, with which she has failed to comply.

A recent federal case has addressed the interaction between the procedural requirements of our State Act and EMTALA. *See Reid,* 709 F.Supp. 853. In *Reid,* the court addressed a similar but inverted issue to that facing us today. The plaintiff in *Reid* had filed an action under EMTALA in federal court, but failed to file a proposed complaint with the Department as required by the State Act. *Id.* at 853–854. The defendant hospital moved to dismiss because the plaintiff had failed to comply with Indiana's procedural mandates found in the State Act. The court held that:

---

**6.** IND.CODE § 16–9.5–1–1, *et seq.*

**7.** 42 U.S.C. § 1395dd.

"[t]he Indiana Code's provision that no cause of action against a health care provider arises until an opinion has been rendered by the state medical review panel 'directly conflicts' with section 1395dd's provision that such a cause of action arises whenever '[a]ny individual ... suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section.' 42 U.S.C. § 1395dd(d)(3)(A) [8]."

*Id.* at 855. Thus, the court found that EMTALA preempts the State Act's procedural requirements, and does not incorporate state procedural limitations. *Id.*

We find the *Reid* court's analysis equally applicable here. Gregory's EMTALA claim against Hospital is technically not a claim for medical malpractice within the State Act, but an action based upon a violation of a federal statute. As Gregory agrees, EMTALA created a federal cause of action under federal law, governed exclusively by the federal act, but that may be pursued in federal or state fora. *See Thornton v. Southwest Detroit Hospital* (6th Cir.1990), 895 F.2d 1131, 1133 (actions under EMTALA may be brought in appropriate state or federal court); *Reid,* 709 F.Supp. at 854, n. 1. This choice of forum in which to pursue an EMTALA claim, however, does not indicate that all state procedural requirements are encompassed when maintaining an action based on the federal statute.

Rather, we agree with the *Reid* court's reasoning, and find that the State Act's provision requiring the filing of a proposed complaint with the Department, and the ensuing indeterminate waiting period until a medical review panel renders an opinion as a prerequisite to filing an action in court, directly conflicts with the two-year statute of limitations contained in EMTALA. *See* I.C. § 16–9.5–9–2; 42 U.S.C. § 1395dd(d)(3)(C). Specifically, the time period spent waiting for an opinion from a medical review panel may exceed the two-year statute of limitations found in EMTALA; thus, when an opinion from a medical review panel is ultimately rendered, EMTALA's statute of limitations may have al-

ready expired, barring a claim. Despite Gregory's claim to the contrary, there is no provision in EMTALA which effectively tolls the statute of limitations while awaiting a state procedural prerequisite, such as an opinion from a medical review panel, as is contained in the State Act. *See* 42 U.S.C. § 1395dd; IND.CODE § 16–9.5–9–1(b). Because of this direct conflict, EMTALA preempts the State Act, and Gregory may neither sidestep EMTALA's two-year statute of limitations for filing an action by claiming compliance with the State Act's procedures regarding the Department, nor seek to extend, expand, or enlarge her rights under the federal act with state law. We will not allow Gregory to engraft the state requirement of filing a proposed complaint with the Department onto EMTALA, where such is strictly prohibited by EMTALA's preemption clause. *See* 42 U.S.C. § 1395dd(f). We note that this interpretation is consistent with other courts facing similar issues involving EMTALA. *See, e.g., Cleland v. Bronson Health Care Group, Inc.* (6th Cir.1990), 917 F.2d 266, 270 (although EMTALA does not preempt entire medical malpractice field, in certain instances delineated as exceptions to 42 U.S.C. § 1395dd(f), preemption is affirmatively mandated); *Burrows v. Turner Memorial Hospital, Inc.* (W.D.Ark.1991), 762 F.Supp. 840, 843 (state procedural rule extending statute of limitations after dismissal without prejudice applies only to state medical malpractice claim, not to statute of limitations applicable to EMTALA claim governed by federal law); *Deberry,* 741 F.Supp. at 1307 (conflict preemption, not field preemption, required by 42 U.S.C. § 1395dd(f)); *Evitt v. University Heights Hospital* (S.D.Ind. 1989), 727 F.Supp. 495, 497 (same); *see also Felder v. Casey* (1988), 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123, 137–138 (citing *Brown v. Western Railway of Alabama* (1949), 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100) (federal rights cannot be defeated by form of local practice); *Smith v. Richmond Memorial Hospital* (1992), 243 Va. 445, ——, 416 S.E.2d 689, 695 (tolling

---

**8.** This section has been recodified at 42 U.S.C. § 1395dd(d)(2)(A).

provisions of state statute cannot act to toll running of statute of limitations established in federal legislation which creates federal right of action under EMTALA).

Gregory's reliance on *Draper v. Chiapuzio* (D.Or.1991), 755 F.Supp. 331, is misplaced. In *Draper,* the Oregon statute at issue required a tort claim notice to be filed within one year after the alleged loss or injury. *Id.* at 333. Thus, the court held that this one-year statute of limitations provision did not directly conflict with any of EMTALA's provisions, specifically, the two-year statute of limitations, so the Oregon procedural requirement was not preempted by EMTALA. *Id.* Unlike the Oregon procedural requirement in *Draper,* the State Act's procedural requirements regarding the Department, specifically the indeterminate waiting period required before an opinion is issued from a medical review panel, as discussed above, directly conflict with EMTALA's two-year statute of limitations; therefore, preemption is mandated.

■ Contrary to Gregory's assertion, filing a proposed complaint with the Department is not equivalent to commencing an action under EMTALA because under federal law, commencing an action means filing a complaint with a court, not the Department. *See* Fed.R.Civ.P. 3; *cf. Thornton,* 895 F.2d at 1133 (cause of action under EMTALA not analogous to state medical malpractice claim because it creates liability for refusal to treat, while state malpractice act does not). Moreover, I.C. § 16–9.5–9–2(a) states that a plaintiff cannot institute an "action" in court until the medical review panel has issued its opinion, thereby distinguishing between the administrative role the Department has in plaintiffs' pursuits of their claims, and the judicial role that courts play when plaintiffs file actions after receiving opinions from the Department. *Cf. Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 824 (statute of limitations under State Act tolled while medical review panel considers proposed complaint; if panel decides that health care provider not qualified under State Act, statute of limitations begins running again, and *claimant*

*must file action in court or risk being barred by statute of limitations* ) (emphasis added). Again, Gregory may not shield her non-compliance with EMTALA's procedural mandates by asserting compliance with the State Act.

■ Additionally, Gregory's argument that the concurrent jurisdiction shared by state and federal fora in addressing EMTALA claims supports her position is incorrect. Merely bestowing concurrent jurisdiction on state courts does not mandate the application of the procedural mandates of the State Act. *See George v. Hatcher* (1988), Ind.App., 527 N.E.2d 199, 201 (citing *Felder v. Casey* (1988), 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123) (notice provisions of state law not applicable in federal proceedings based on federal statutes, although concurrent jurisdiction bestowed on state and federal courts). Despite the provision of concurrent jurisdiction, a state's authority "does not extend so far as to permit states to place conditions on the vindication of a federal right." *Felder,* 487 U.S. at 147, 108 S.Ct. at 2311, 101 L.Ed.2d at 143. We cannot condone Gregory's use of the State Act to foil EMTALA's statute of limitations.

Gregory's claim here may be analogized to claims made under 42 U.S.C. § 1983. Although such claims are tort in nature, states may not require the filing of a tort claims notice if parties choose to file such federal actions in state court. *George,* 527 N.E.2d at 201 (notice provisions of state tort law not applicable in 42 U.S.C. § 1983 proceedings). In those situations, as here, litigants may not circumvent the requirements of federal statutes by overlaying state statute requirements thereon.

In sum, we find that case law from other jurisdictions considering the interaction of EMTALA with state provisions similar to our State Act complements the *Reid* court's analysis, and thus adopt in relevant part these courts' reasoning. While we are sympathetic to Gregory's plight, we will not gloss over the federal preemption doctrine to provide remedies to plaintiffs who have failed to follow the procedural mandates of the federal statutes under which

they assert claims. Gregory failed to file her EMTALA claim within two years of the alleged violation on November 13, 1987; thus, her claim is time-barred, and summary judgment should have been granted in Hospital's favor.[9]

We reverse and remand for the entry of summary judgment in Hospital's favor on Gregory's EMTALA claim.

Reversed and remanded.

ROBERTSON and BUCHANAN, JJ., concur.

---

**9.** We merely hold that recovery under EMTALA is time-barred; however, Gregory may still pursue her claim under the State Act, as long as she complies with its procedural mandates. *See* *Fields v. Cummins Employees Federal Credit Union* (1989), Ind.App., 540 N.E.2d 631, 639 (plaintiffs with both state and federal causes of action may pursue one and not other).