Leo JOHNSON, Individually and as Representative of the Estate of Betty Johnson, Deceased; Doretha Johnson, Robert Johnson, Leon Johnson, Andrea Johnson, Kenneth Johnson, Chris Johnson and Steve Johnson, Appellants,

v.

NACOGDOCHES COUNTY HOSPITAL DISTRICT d/b/a Nacogdoches Memorial Hospital, Appellees.

No. 12–00–00348–CV.

Court of Appeals of Texas, Tyler.

July 25, 2001.

Rehearing Overruled Aug. 21, 2001.

David R. Weiner, Dallas, for appellants.

William D. Guidry, Nacogdoches, for appellees.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

DAVIS, Chief Justice.

Leo Johnson, individually and as representative of the estate of his wife, Betty Johnson, and their children, Doretha, Robert, Leon, Andrea, Kenneth, Chris, and Steve, appeal from a summary judgment entered in favor of Nacogdoches County Hospital District d/b/a Nacogdoches Memorial Hospital in their wrongful death and survival action against the Hospital. In two issues, the Johnsons assert that the trial court erred in granting the Hospital's motion for summary judgment because the Texas Tort Claims Act's notice provision does not apply to their federal cause of action and because there is an issue of material fact regarding whether the Hospital had actual notice of their claim. Because we conclude the summary judgment evidence raised a fact question on the issue of actual notice, we reverse the trial court's judgment and remand for further proceedings.

### FACTS

Betty Johnson went to the Nacogdoches Memorial Hospital emergency room because she had suddenly become very ill. After about twenty minutes, she was seen by a nurse. After another forty to forty-five minutes, she left the Hospital because she felt she was not going to be seen by a doctor. She went to Nacogdoches Medical Center.[1] After being there for some time without medical attention, she left and went to a third medical facility. That clinic arranged for her to be taken to a hospital in Center, Texas from which she was care flighted to a Tyler hospital. There she died of meningitis.

The Johnsons sued the Hospital for violations of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), which requires appropriate medical screening of an emergency room patient, and section 241.027 of the Texas Health and Safety Code, governing the transfer of patients between hospitals. 42 U.S.C. § 1395dd (Supp.2000); TEX. HEALTH & SAFETY CODE ANN. § 241.027 (Vernon 2001). The Hospital filed a motion for summary judgment explaining that it is a govern-

---

1. The Johnsons also sued Nacogdoches Medical Center. However, as that cause of action was severed from the cause of action against the Hospital, Nacogdoches Medical Center is not a party to this appeal.

mental unit which enjoys sovereign immunity and, under the Texas Tort Claims Act, it is entitled to receive notice of a claim against it not later than six months after the incident the claim is based on. Betty Johnson went to the Hospital on January 12, 1998, but the Hospital did not receive written notice of the claim against it until August 12, 1998. The Hospital also asserted that it did not have actual notice of the claim within six months of the incident. Therefore, it claimed entitlement to judgment as a matter of law. The Hospital relied on an affidavit of its administrator, in which he stated that notice was received on August 12, 1998 and that the Hospital did not have actual knowledge of the claim prior to that date. The Hospital also presented deposition testimony from each of the plaintiffs in which they stated that they did not ever contact anyone at the Hospital about this case.

The Johnsons asserted in their response that EMTALA, their federal cause of action, does not have a notice requirement and, since federal law preempts state law, they were not required to give notice of the EMTALA claim. They also argued that the notice requirement of the Texas Tort Claims Act does not apply to their Texas Health and Safety Code cause of action. Further, they asserted that the hospital had actual notice of their claim within six months of the incident. For this assertion, the Johnsons relied on an affidavit of Helena Abdullah, a director of the Hospital, in which she states that, in January 1998, she was made aware that Betty Johnson had gone to the emergency room, had not been provided an examination or treatment, went to a different facility, and subsequently died. She also stated that she "was made aware of the issue of the potential liability" of the Hospital for Betty Johnson's death. She asked a nurse manager to look into the matter for her. The trial court found an absence of a genuine

issue of any material fact on the grounds urged and granted the Hospital's motion for summary judgment.

### STANDARD OF REVIEW

To obtain a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or conclusively establishes all elements of an affirmative defense as a matter of law. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the non-movant to produce controverting evidence raising a fact issue as to the elements negated. *Torres v. Western Cas. & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970); *Owen Elec. Supply, Inc. v. Brite Day Constr. Inc.*, 821 S.W.2d 283, 286 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

### APPLICABILITY OF STATE LAW

In their first issue, the Johnsons contend that the trial court erred in granting the Hospital's motion for summary judgment because the notice-of-claim requirement of the Texas Tort Claims Act does not apply to their EMTALA cause of ac-

tion. Specifically, they argue that because the notice requirement is a state procedural provision, not a substantive provision, it is inapplicable in a suit brought pursuant to a federal statute.

The Hospital asserts that EMTALA does not preempt state law. It contends that the Texas Tort Claims Act applies, and because the Johnsons did not provide it with timely notice of their claim, the entire cause of action fails, including the EMTALA claim.

■ The Johnsons rely on *Parrish v. Brooks*, 856 S.W.2d 522 (Tex.App.Texarkana 1993, writ denied). In *Parrish*, the Texarkana Court of Appeals stated that the plaintiffs' failure to comply with the notice provision of the Texas Tort Claims Act did not foreclose the plaintiffs' EMTALA cause of action because the state notice requirement is procedural, not substantive. *Id.* at 526. Relying on a federal district court case, *Reid v. Indianapolis Osteopathic Medical Hospital, Inc.*, 709 F.Supp. 853 (S.D.Ind.1989), the Texarkana court determined that federal procedure must be followed. *Parrish*, 856 S.W.2d at 526. Opinions of sister appellate courts do not set precedent and we are not required to follow them. *Eubanks v. Mullin*, 909 S.W.2d 574, 576 n. 1 (Tex.App.Fort Worth 1995, orig. proceeding). Because we determine that *Reid* is distinguishable, we decline to follow *Parrish*. In *Reid*, the federal district court determined that a state statutorily imposed procedural requirement did not apply to a federal cause of action brought in a federal court. *Reid*, 709 F.Supp. at 854–55. Here, we are concerned with the applicability of a state law of procedure to a federally created cause of action tried in state court.

■ Generally, when substantive federal claims are raised in state court, state law and rules still govern the manner in which the federal questions are tried and proved. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992) (orig.proceeding); *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 661 (Tex. 1990) (on reh'g); *Dillard Dept. Stores, Inc. v. Owens*, 951 S.W.2d 915, 919 (Tex.App.Corpus Christi 1997, no writ). The federal statute at issue does not require an exception to this general rule. EMTALA's preemption provision provides: "The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f). A state statute presents an actual conflict with federal law when compliance with both federal and state regulations is a physical impossibility or where the state law "stands as an obstacle" to the "execution of the full purposes and objectives of Congress." *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1, 4 (Tex.1998). The Johnsons have not attempted to articulate arguments showing that compliance with both the Tort Claims Act's notice provision and EMTALA is impossible and we are able to envision none. Further, the notice requirement does not thwart EMTALA's purpose of preventing hospitals from turning away uninsured patients who seek emergency treatment. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 795 (2nd Cir.1999). Accordingly, we determine that state procedural law, the Texas Tort Claims Act, applies in this case.

■ In Texas, the state is immune from liability for any alleged tort unless an exception to such immunity is provided for in the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.2000); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976). The Hospital is a governmental entity and enjoys immunity unless the neg-

ligent or wrongful act alleged falls within the statutory waiver of immunity. *Id.* The Tort Claims Act did not abolish the doctrine of sovereign immunity. *University of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994). Instead, it operates to waive governmental immunity only in certain circumstances. *Id.* As a prerequisite to suit and to liability, the Tort Claims Act provides that unless the governmental unit has actual notice of the claim, it is entitled to receive notice of the claim not later than six months after the day the incident giving rise to the claim occurred. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101. The failure to give notice under section 101.101 precludes the waiver of official immunity. *Garcia v. Texas Dept. of Crim. Justice,* 902 S.W.2d 728, 731 (Tex.App.Houston [14th Dist.] 1995, no writ). Accordingly, because state procedural law applies, the notice requirement of the Texas Tort Claims Act applies to the Johnsons' EMTALA cause of action. We overrule the Johnsons' first issue.

### ACTUAL NOTICE

In their second issue, the Johnsons assert that the trial court erred in granting the Hospital's motion for summary judgment because there is a genuine issue of material fact regarding whether the Hospital had actual notice of their claim against it. They rely on the affidavit of Helena Abdullah, a Hospital director, to support their argument.

In her affidavit, Abdullah stated that, in January of 1998, she was a director of the Hospital and was made aware that Betty Johnson had gone to the Hospital's emergency room. She was also aware that Mrs. Johnson had not been provided emergency medical examination or treatment and subsequently died. Abdullah also stated that she was aware of the issue of the Hospital's potential liability.

The Tort Claims Act provides that the formal notice requirements do not apply if the governmental unit has actual notice of the claim against it. TEX. PRAC. & REM.CODE ANN. § 101.101(c). Actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage, (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage, and (3) the identity of the parties involved. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam).

The Abdullah affidavit showed that, in the same month Mrs. Johnson died, the Hospital knew her identity and that she died, and that its failure to examine and treat her allegedly contributed to her death. We conclude that the Abdullah affidavit presented by the Johnsons raises a fact issue regarding whether the Hospital had actual notice of their claims against it. *See id.* Accordingly, the trial court erred in granting the Hospital's motion for summary judgment. We sustain the Johnsons' second issue.

We reverse the trial court's judgment and remand this cause for further proceedings.