**Adam MERCE, an individual, and Emily Demong, an individual, Plaintiffs,**

v.

**Mark W. GREENWOOD, M.D., David M. Pope, M.D., Kirk R. Anderson, M.D., IHC Health Services, Inc., dba Sevier Valley Hospital and IHC Health Services, Inc., dba Utah Valley Regional Medical Center, Defendants.**

**No. 2:04–CV–00610 PGC.**

United States District Court, D. Utah, Central Division.

Dec. 17, 2004.

---

3. AR 00840–00885.

4. AR 00830–00860, 00918–22.

5. AR 00841–00861.

6. AR 00840–00845.

Cory Mattson, Mark McLachlan, Matthew Raty, Salt Lake City, UT, for Plaintiffs.

Charles Dahlquist, Daniel Ditto, David Erickson, Gary Ferguson, Kurt Frankenburg, Suzette Goucher, David Hardy, R. Scott Williams, Salt Lake City, UT, for Defendants.

## ORDER DISMISSING PLAINTIFFS' EMTALA CLAIMS AND DENYING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

CASSELL, District Judge.

This case presents a statute of limitations question under the Emergency Medical Treatment and Active Labor Act (EMTALA). In June 2002, plaintiff Adam Merce was discharged from emergency room treatment by defendant doctors David M. Pope and Mark W. Greenwood. Shortly after that discharge, he suffered serious injuries—injuries, he alleges, the doctors should have discovered in his emergency room visits. More than two years later (in July 2004), Merce filed the lawsuit alleging several claims, including violations of EMTALA's anti-dumping provisions. The doctors moved to dismiss the EMTALA claims, citing EMTALA's two-year statute of limitations. Merce responded that the two-year statute had not run because of various state law tolling provisions, including tolling provisions for

pre-litigation screening procedures and for delayed discovery of an injury.

The court rejects Merce's argument that EMTALA's two-year statute of limitations is tolled by these state law provisions. Congress chose to adopt an iron-clad two-year statute, rather than allow tolling for such reasons. The court must therefore follow the congressional determination and dismiss Merce's EMTALA's claims.

## I. Background

For purposes of this motion, the court finds the following facts. Plaintiff Adam Merce began feeling sick on June 15, 2002. On June 18, 2002, during a CT scan, Merce suffered a grand mal seizure and was taken to the emergency room at Sevier Valley Hospital in Richfield, Utah. Dr. Pope was the emergency room physician who examined Mr. Merce there. Dr. Pope diagnosed a grand mal seizure, prescribed Dilantin and told Mr. Merce to go home. Merce went home as ordered, but his problems continued. In the early morning hours of June 19, 2002, Merce returned to the emergency room. Dr. Greenwood examined him, gave him a spinal tap and, diagnosed viral spinal meningitis. Dr. Greenwood prescribed morphine and antibiotics and admitted Merce to the hospital.

The next day, worried by his apparent lack of improvement and ultimately dissatisfied with the care at Sevier Valley hospital, Merce's companion, plaintiff Emily Demong, drove Merce to Utah Valley Medical Center in Provo. His condition continued to worsen until, on June 22, 2002, an MRI was finally performed. The MRI revealed that Merce suffered from herpes simplex encephalitis. Merce slipped into a coma that same afternoon.

Plaintiffs allege that Merce suffered acute brain injury as a result of the failure to accurately diagnose or treat his condi-tion. Plaintiffs have brought state law medical malpractice and EMTALA claims against Drs. Pope and Greenwood in connection with these events.

## II. Pope's and Greenwood's Motion to Dismiss Plaintiffs' EMTALA claims

Dr. Pope's alleged EMTALA violation occurred on June 18, 2002. Dr. Greenwood's allegedly occurred on June 19, 2002. But plaintiffs did not file their present EMTALA claims until July 1, 2004, more than two years after these alleged violations took place. Dr. Pope has therefore moved to dismiss plaintiffs' EMTALA claims under EMTALA's two-year statute of limitation, and Dr. Greenwood has joined that motion.

In response, plaintiffs argue that EMTALA's two-year statute of limitations is tolled by the pre-litigation procedures required under Utah State law and that EMTALA's statute of limitations does not run until a claimant "discovers" the violation.

Oddly, neither defendant has raised a straightforward challenge to plaintiffs' EMTALA claim against him: namely, that under the plain language of the Act, only hospitals can be sued for violations.[1] A private right of action against an individual doctor does not appear to be authorized. However, because the court disposes of plaintiffs' EMTALA claims against Drs. Pope and Greenwood on statute of limitations grounds, it has no need to further address this issue.

EMTALA provides a private cause of action for its violation and contains its own statute of limitations provision: "[n]o action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought."[2] In addi-

---

**1.** 42 U.S.C. § 1395dd(d)(2)(A).

**2.** 42 U.S.C. § 1395dd(d)(2)(C).

tion, EMTALA contains a preemption provision, which states that nothing in the act "preempt[s] any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section."[3] EMTALA is a separate federal statute, not merely an outgrowth of state malpractice law. As the Tenth Circuit has repeatedly noted, EMTALA "[s]ection 1395dd is an anti-dumping provision, not a federal medical malpractice law."[4] EMTALA does, however, incorporate state law provisions regarding available damages.[5]

Utah state law contains several provisions circumscribing the statute of limitations in medical malpractice cases. Under Utah law, the two-year limitations period is expressly tolled while plaintiffs comply with the required pre-litigation screening procedures.[6] Pre-litigation screening and certification of claims is required under Utah law before a medical malpractice claim can be filed[7] and a request for panel review must be made within 60 days after service of the statutorily-required notice of intent to commence a medical malpractice action.[8] The Division of Professional Licensing must complete its pre-litigation hearing within 180 days of the date a request for review is filed[9] or else its jurisdiction terminates and a claimant is held to have complied with all requirements for commencement of a court action.[10] In addition to these pre-litigation requirements, Utah law also provides that the statute of limitations does not begin to run until "discovery" of the conduct giving rise to the alleged injury.[11]

Plaintiffs argue that because EMTALA adopts substantive state law provisions governing available damages, it also incorporates substantive state law procedural provisions governing malpractice claims (including provisions tolling the statute of limitations) and that EMTALA's two-year statute of limitations is thus tolled by these provisions. While the Tenth Circuit has not addressed this issue, the Fourth Circuit has squarely rejected plaintiffs' argument. In *Vogel v. Linde*,[12] the Fourth Circuit held that EMTALA's two-year limitations period is not tolled by infancy or incompetency (as limitations periods would be under Virginia state law) because it is black letter law that statutes of limitation do not toll unless the statute expressly so provides. Subsequently, in *Power v. Arlington Hospital*,[13] the Fourth Circuit concluded that pre-litigation claim screening provisions required under Virginia state law did not toll EMTALA's two-year limitations period because the state law provisions conflicted with the federal statute and were thus preempted by EMTALA.

*Power* involved a situation inverse to the situation here; it was the defendant seeking to incorporate state law restrictions on the statute of limitation, rather than the plaintiff. But the principle remains the same: state law does not alter EMTALA's

---

3. 42 U.S.C. § 1395dd(f).

4. *St. Anthony Hospital v. U.S. Dept. of Health and Human Services*, 309 F.3d 680, 694 (10th Cir.2002) (citing *Bryan v. Rectors & Visitors of University of Virginia*, 95 F.3d 349, 351 (4th Cir.1996); *Repp v. Anadarko Municipal Hosp.*, 43 F.3d 519, 522 (10th Cir.1994)).

5. 42 U.S.C. § 1395dd(d)(2)(A).

6. UTAH CODE ANN. § 78–14–12(3)(a).

7. UTAH CODE ANN. § 78–14–12(2)(a).

8. *Id.*

9. UTAH CODE ANN. § 78–14–12(3)(b)(i).

10. UTAH CODE ANN. § 78–14–12(3)(b)(ii).

11. UTAH CODE ANN § 78–14–4(1) (2002).

12. 23 F.3d 78 (4th Cir.1994).

13. 42 F.3d 851 (4th Cir.1994).

congressionally-determined procedural requirements regardless of whom they benefit. Thus, the defendant hospital in *Power* had moved to dismiss plaintiff's EMTALA claim because she had failed to submit her claim for pre-litigation review by a medical malpractice review panel as required under Virginia law. The district court denied the hospital's motion to dismiss and the Fourth Circuit affirmed, holding that EMTALA does not "expressly or impliedly incorporat[e] state-mandated procedural requirements for EMTALA claims."[14] The Circuit agreed with a previous ruling by the Virginia Supreme Court that Virginia's "notice of claim provision, and its requirement that suits cannot be filed until after they are reviewed by a malpractice review panel, directly conflicts with EMTALA."[15] The Circuit then noted that "[n]otwithstanding the fact that the Virginia Act tolls the statute of limitations during compliance with its procedural prerequisites, these state law tolling provisions cannot toll the running of EMTALA's statute of limitations,"[16] and cited as support for this position the U.S. Supreme Court's recognition that " '[i]f Congress expressly puts a limit upon the time for enforcing a right which it created, there is an end of the matter.' "[17] The Circuit thus concluded that because Virginia's pre-litigation procedures had the potential to directly conflict with EMTALA, they were "not applicable to an EMTALA claim." Failure to comply with state procedures, in other words, would not bar plaintiff's EMTALA claim.

The U.S. District Court for the District of Colorado also recently reached a similar conclusion. In *Bird v. Pioneers Hospi-*

*tal,*[18] plaintiff Bird brought an EMTALA claim against Pioneers Hospital after she was discharged during labor and told to drive herself to another hospital in Grand Junction, Colorado. She started to deliver her baby en route and due to complications that developed, her baby suffered severe injuries and died 15 days later. Pioneers Hospital moved to dismiss plaintiff's EMTALA claim on the ground that she had failed to comply with the notice-of-claim requirements under the Colorado Governmental Immunity Act (CGIA). The district court rejected this argument. The court held that EMTALA preempts the state law notice-of-claim requirement "because the state statute . . . is potentially in direct conflict with EMTALA's statute of limitations." In so doing, the district court followed the Fourth Circuit's reasoning in *Power*:

> Under the CGIA . . . a plaintiff's notice requirement is triggered by the "discovery" of his injury, whereas EMTALA's statute of limitations commences as of the date of the violation of the Act. Further, the CGIA tolls statutes of limitations pending compliance with the CGIA's procedural requirements where the time necessary for such compliance would otherwise exceed the limitations period. Consequently, a plaintiff may discover his injuries and provide notice within EMTALA's statute of limitations but still fail to complete the CGIA's presuit compliance procedures and file his complaint within the federal limitations period. As a result, there is a potential direct conflict between compliance with the CGIA's procedural re-

---

14. *Id.* at 866.

15. *Id.* (citing *Smith v. Richmond Memorial Hosp.,* 243 Va. 445, 416 S.E.2d 689, 695 (1992)).

16. *Id.*

17. *Id.* (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946)).

18. 121 F.Supp.2d. 1321 (D.Colo.2000).

quirements and EMTALA's statute of limitations. Accordingly, I conclude that EMTALA preempts the CGIA's notice of claim statute because the state procedural requirement stands as an obstacle to the accomplishments and execution of Congress' objectives in enacting EMTALA.[19]

The reasoning of both the Fourth Circuit in *Power* and the District of Colorado in *Bird* is persuasive here. State procedural requirements could stand as an obstacle to the congressional determination that a two-year statute of limitations is appropriate for EMTALA claims. The court therefore holds that because a potential direct conflict exists between Utah's pre-litigation claim screening requirements and EMTALA's statute of limitations, EMTALA preempts state law on this point. As a result, Utah state pre-litigation screening requirements are not "incorporated" into EMTALA and do not toll EMTALA's two-year limitations period.

The Second Circuit's decision in *Hardy v. New York City Health & Hospitals Corp.*[20] and the Ninth Circuit's decision in *Draper v. Chiapuzio*[21] do not alter the court's conclusion. Both *Draper* and *Hardy* involved the interrelationship between state law notice-of-claim provisions and EMTALA's statute of limitations. In both cases, the Circuits held that EMTALA did not preempt the state law notice-of-claim requirements. The Circuits reasoned that compliance with both EMTALA's two-year statute of limitations and the state law notice-of-claim provisions at issue was not an impossibility and thus, that no direct conflict between state and federal law existed.

*Draper* and *Hardy* may be incorrectly decided. The New Mexico Court of Appeals came to this conclusion in *Godwin v. Memorial Medical Center.*[22] In *Godwin*, the state trial court had granted summary judgment to the hospital on Godwin's EMTALA claim finding that Godwin had not filed a notice-of-claim within 90 days of the event giving rise to the injury as required under New Mexico's Tort Claims Act and that this notice-of-claim provision was incorporated into EMTALA thus barring Godwin's suit. The Court of Appeals reversed, holding that the notice-of-claim provision in the state's Tort Claims Act did not apply to EMTALA actions. The Court of Appeals thus rejected the reasoning of *Draper* and *Hardy*, instead concluding that

> [t]he fact of the matter is that if failure to give a 90–day notice bars an Emergency Act claim, the two-year period given [under EMTALA] is taken away. The two-year limitations period in effect is reduced to 90 days or less and effectively vitiated. These circumstances create a direct conflict between the Tort Claims Act notice-of-claim requirement and the Emergency Act's statute of limitations and purposes. We hold that the Tort Claims Act notice-of-claim requirement is preempted by the Emergency Act and therefore not applicable to an Emergency Act claim.[23]

The court need not go so far as the New Mexico Court of Appeals, however, because *Draper* and *Hardy* are distinguishable from the case at hand. Both *Draper* and *Hardy* involved state law requirements that at least arguably created no conflict with EMTALA. Both cases involved state laws requiring merely that a

---

19. *Id.* at 1326.

20. 164 F.3d 789 (2nd Cir.1999).

21. 9 F.3d 1391 (9th Cir.1993).

22. 130 N.M. 434, 25 P.3d 273 (2001).

23. *Id.* at 282.

notice of claim be filed—and nothing more—before a plaintiff could file suit. Such laws are different than Utah's medical malpractice scheme, which requires not only the simple filing of a notice-of-claim but also undergoing a pre-litigation panel review process during which the statute of limitations is tolled. This difference is crucial because while a state law requiring a plaintiff to give notice of claim does not clearly conflict with EMTALA's statute of limitations, an express tolling provision such as Utah's certainly may in some circumstances. Thus, *Hardy* and *Draper* can ultimately be harmonized with *Power* and *Bird* by recognizing that the simple state law notice-of-claim provisions at issue there were not inconsistent with EMTALA. As the District Court for the District of Colorado persuasively explained in *Bird,*

> *Hardy* and *Draper* are distinguishable from the circumstances presented here because unlike the notice-of-claim statute in [CIGA], the statutes in *Hardy* and *Draper* only require timely notice and do not mandate further compliance with any pre-suit procedures. Therefore, *Hardy* and *Draper* did not address tolling provisions similar to those found in [CIGA], which I conclude are in conflict with EMTALA's statute of limitations. I thus find that [CIGA] is more analogous to the Virginia notice-of-claim statute in *Power* which contained similar tolling provisions.[24]

Here, as in *Power* and *Bird,* the prelitigation claim screening requirements—with their attendant tolling provisions—do pose a potential direct conflict with EMTALA's statute of limitations and are therefore preempted by EMTALA.

■ Plaintiffs would also have the court hold that EMTALA's two-year statute of limitations is tolled until the discovery of the conduct giving rise to the injury, just

as it is under state law. Plaintiffs reiterate their "incorporation" arguments and raise equitable concerns in support of this position. But any state law provision about "tolling until discovery" directly conflicts with the plain language of 42 U.S.C. § 1395dd(d)(2)(C), which provides that EMTALA's limitations period begins to run from the "date of the violation." And as for plaintiffs' argument that it would be unfair to more seriously injured patients not to toll EMTALA's statute of limitations until discovery of violations, some potential unfairness is inherent in the very conception of a statute of limitations. That unfairness to the plaintiff must, of course, be balanced against the need for defendants to know in a timely way whether they will be sued. In enacting EMTALA, Congress certainly could have expressly provided for tolling of the limitations period until discovery of the conduct giving rise to the injury. The fact that it chose not do so likely reflects an attempt to strike the proper balance between the harm to patients and the legitimate concern providers have in being able to predict their potential liabilities for insurance and other reasons. In any event, the weighing of the competing concerns is for Congress, and not this court, to tackle.

Finally, plaintiffs argue that failure to allow tolling of EMTALA's two-year statute of limitations until the date of discovery of the injury would violate their rights to due process and equal protection under the 14th Amendment to the United States Constitution. The court will not address the merits of these dubious arguments for lack of adequate briefing of the issues.

### III. Plaintiffs' Motion to Amend the Complaint

Plaintiffs have moved to amend their complaint to add facts establishing that

---

24. *Bird,* 121 F.Supp.2d at 1324 n. 1 (internal   citations omitted).

Mr. Merce was incapacitated until July 7, 2002, and thus could not have discovered the EMTALA violation prior to that date. But because the court has already rejected plaintiffs' argument that EMTALA's statute of limitation runs from the date of discovery of the injury instead of from the date of the violation, plaintiffs' amendment, even if allowed, would not prevent dismissal of the EMTALA claims and would thus be futile.[25] Because plaintiffs' proposed amendment would be futile, leave to amend need not be granted [26] and plaintiffs' motion to amend is, accordingly, denied.

### IV. Sevier Valley Hospital's and Utah Valley Regional Medical Center's Motion to Dismiss Plaintiff's EMTALA claims

IHC Health Services, Inc., doing business as both Sevier Valley Hospital and Utah Valley Regional Medical Center, have also filed a motion to dismiss plaintiffs' EMTALA claims on statute of limitations grounds. They filed this motion after briefing and oral argument on Drs. Pope and Greenwood's motion had been completed. Although the court fails to see why the reasoning of this opinion would not apply with equal force to this later-filed motion to dismiss, the court nonetheless gives plaintiffs three weeks in which to either oppose the motion to dismiss or to indicate their lack of objection to dismissal of the remaining EMTALA claims.

### V. Conclusion

Because plaintiffs' EMTALA claims were not filed until more than two years after the date of the alleged violations of the act, and because the court finds that EMTALA does not incorporate state law pre-litigation claim screening requirements and that its two-year limitations period

begins to run from the date of the alleged violations, plaintiffs' EMTALA claims were untimely filed and defendants Pope and Greenwood's motion to dismiss (9–1; 12–2) is GRANTED. Because the proposed amendment would be futile, plaintiffs' motion to amend the complaint (14–1) is DENIED. The case will proceed, of course, on the state law medical malpractice claims.

---

25. *See Watson v. Beckel,* 242 F.3d 1237 (10th Cir.2001).

26. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).